UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LOVENSON ALLEN MOSE,

    Plaintiff,

v.                                                                                  Case No. 3:18cv493-LC-HTC

DEMONTMOLLIN, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Lovenson Allen Mose, proceeding *pro se* and *in forma pauperis*, files this action under 42 U.S.C. §1983, alleging the Defendants violated his Eighth Amendment right against cruel and unusual punishment. Defendant Nelson, in her individual capacity, has filed a motion to dismiss (ECF Doc. 44), to which Plaintiff has not responded.[1] The motion has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Upon consideration of the second amended complaint, the motion, and relevant law, the undersigned recommends that Defendant Nelson's motion to dismiss be GRANTED for Plaintiff's failure to exhaust his administrative remedies.

---

[1] The Plaintiff was given until September 16, 2019, to file a response. ECF Doc. 46.

## I. Background

Plaintiff is an inmate of the Florida Department of Corrections ("FDOC") currently confined at Apalachee Correctional Institution. The allegations in Plaintiff's second amended complaint relate to an incident that occurred while Plaintiff was at Century Correctional Institution ("Century"). Plaintiff names two (2) Defendants: Officer Demontollin and Nurse Nelson. ECF Doc. 24.

The crux of Plaintiff's allegations are as follows: On December 5, 2017, Plaintiff was transferred to a new cell by officers at Century. He told Defendant Demontollin that he suffers from chronic seizures and has a low bunk pass. According to Plaintiff, Defendant Demontmollin responded that he would spray Plaintiff with chemical agents if he did not "go in the room on the top bunk." *Id.* Defendant Demontmollin also told Plaintiff that "he had destroyed, tore up [Plaintiff's low bunk] pass etc." and, thus, Plaintiff was "forced to attempt to sleep on the top bunk." *Id.* at 5-6.

Later that evening, Plaintiff had a seizure, fell from the top bunk, and injured himself. *Id.* at 6. Plaintiff was escorted to the medical unit and examined by Defendant Nelson. *Id.* Plaintiff's factual allegations against Defendant Nurse are limited to the following: During Plaintiff's examination by Defendant Nelson "to determine if serious injuries are apparent from this touch probe and so forth. Security is more dictating all going on. Plaintiff is explaining pain in lower back

numbness and pain generating through right-shoulder down into my hand etc. Security repetitively and menacing sentiment about [Plaintiff's] symptoms" which resulted in Defendant Nelson "falsifying records about [Plaintiff's] obvious injuries", which continue to cause him pain. *Id.*

## II. Legal Standard

In considering a motion to dismiss for failure to state a claim, the Court reads Plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), and accepts "[a]ll well-pleaded facts in plaintiff's complaint and all reasonable inferences drawn from those facts . . . as true." *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004) (citation omitted). However, mere "labels and conclusions" are not accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (noting courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (explaining that conclusory allegations are not entitled to a presumption of truth); *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true").

As the Supreme Court reiterated in *Iqbal*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556

U.S. at 678. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *Id.* The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, or, "nudge[] the[] claim[] across the line from conceivable to plausible . . .." *Id.* at 570.

## III. Discussion

Defendant Nelson argues Plaintiff failed to exhaust his administrative remedies against her before bringing this suit.[2] In support of her motion to dismiss, Defendant Nelson submits, as a composite exhibit, the grievances and appeals filed by Plaintiff.

### A. Failure to Exhaust

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.

---

[2] Defendant Nelson also moves to dismiss Plaintiff's claims on the failure to allege a physical injury. Because the undersigned finds that Defendant's motion should be granted on the grounds of failure to exhaust, the undersigned does not address this second argument.

Case No. 3:18cv493-LC-HTC

§ 1997e(a). Exhaustion of all available administrative remedies is a mandatory precondition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *See Booth*, 532 U.S. at 734, 741. The requirement is not subject to waiver by a court or futility or inadequacy exceptions. *See id.* at 741 n.6.

Moreover, the PLRA requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006); *see also id.* at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."). A court must dismiss an action if satisfied the inmate failed to properly exhaust his available administrative remedies before filing suit. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).

The defense of failure to exhaust should be treated as a matter in abatement. *See Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). "This means that

procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting *Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *See Turner*, 541 F.3d at 1082. "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* (citing *Bryant*, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (citing *Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). "Once the court makes findings on the disputed issues of fact, it then decides whether

under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

Furthermore, a plaintiff must exhaust his available administrative remedies as to *each claim* and *each party* set forth in his complaint. *See Martinez v. Minnis*, 257 Fed. App'x 261, 265 n. 5 (11th Cir 2007) (finding prisoner who filed grievance concerning numerous claims failed to exhaust a retaliation claim because grievance "did not mention retaliation or use any words synonymous with or indicating retaliation, nor did it provide the BOP with notice of allegedly retaliatory action or the opportunity to correct it").

B. <u>FDOC Grievance Procedures</u>

The Florida Department of Corrections ("FDOC") provides an internal grievance procedure for its inmates, which is codified in the Florida Administrative Code 33-103 through 33-103.018. The grievance procedures generally require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). For complaints regarding medical treatment, an inmate may bypass the informal grievance step. *See* Fla. Admin. Code r. 33-103.005(1). Additionally, the grievance

Case No. 3:18cv493-LC-HTC

procedures require that each grievance address one issue. Fla. Admin. Code 33-103.005(2)(b).

C. Plaintiff's Grievances

On December 12, 2017, Plaintiff filed a formal grievance with the warden's office regarding Defendant Demontmollin's conduct, which he alleged caused him injury. This grievance was assigned log #1712-106-059. EFC Doc. 44-1. Plaintiff does not reference Defendant Nelson in this grievance, and his only reference to medical care is that he was given "some Ibuprofen to slow [his headaches] down along with analgesic balm for [his] lower back and some stool softener to ease everything up to where [he] can use the restroom." *Id.* Nowhere in the grievance does Plaintiff allege Defendant Nelson (or anyone else) falsified records regarding his injuries or provided him inadequate medical care. On December 22, 2017, Plaintiff's grievance was denied with the following findings:

> According to the movement screen in CDC you were placed into Y1105L on 12/5/2017 at 2356. At that time, your pass appeared to have been altered, therefore Officer Demontmollin contacted medical and verified that your pass was valid. You were seen by medical on 12/5/17 by Nurse Nelson. There were no visible injuries documented and you denied any injury.

ECF Doc. 44-2.

On December 18, 2017, Plaintiff filed an informal grievance with the warden's office again regarding Defendant Demontmollin's conduct that he alleged caused him injury. This grievance was assigned log # 106-1712-0153. ECF Doc.

44-3. Nowhere in that 2-page grievance does Plaintiff identify Defendant Nelson by name. Indeed, the only potential reference to Defendant Nelson is when Plaintiff states "I then had to talk to the nurse and then I got switched with a guy that was in Y1105L between 10:50 pm [and] 11:45 pm." *Id.* Plaintiff also does not complain about any medical treatment he received, stating, instead, "I then was in pain to when I filled out a sick call for my lower back, and by me not able to use the bathroom along with me having bad headaches. I was given stool softeners, Ibuprofen, and angastic [sic] balm." *Id.* On December 20, 2017, Plaintiff's grievance was denied, because "[he] [was] never assigned a upper bunk medical documentation was checked and after this "incident" [he] denied any injuries to medical staff which they documented on the emergency room record card the DL 4-708". *Id.*

On December 27, 2017, Plaintiff filed another formal grievance with the warden's office, again regarding only Defendant Demontmollin's conduct. This grievance was assigned log #1712-106-117. ECF Doc. 44-4. Like his prior grievances, this 2-page grievance also did not identify Defendant Nelson by name or contain any complaints about the medical treatment provided. The only potential references to Defendant Nelson are contained in the following statements:

> "I then went to talk to the nurse and when I came back I was switched to room Y1-105L …."

> "I then had to fill out a sick call for the injury I told the nurse that I had got from falling off of Y1-107U."

Case No. 3:18cv493-LC-HTC

"I did tell the nurse that my lower back and my head hurts."

*Id.* There are no allegations that Defendant Nelson engaged in any wrongful conduct or that she (or anyone else) falsified records. On January 5, 2018, his formal grievance was denied. ECF Doc. 44-7.

In January of 2018, Plaintiff appealed his two formal grievances by submitting appeals to the Office of the Secretary. The appeals were assigned #18-6-03420 and #18-6-04222. ECF Docs. 44-5, 44-6. The appeals alleged the same conduct by Defendant Demontmollin as the grievances and neither identify Defendant Nelson by name or include complaints about Plaintiff's medical treatment. Neither mention anything about records being falsified. Instead, the January 18, 2018 appeal, like the grievances, state that Plaintiff told "the nurse" he had been injured from falling off a bunk and his lower back and head hurt. *See id.* These administrative appeals were also denied, one based on a finding that the informal grievance adequately addressed the issues raised, and one on the ground that Plaintiff was never assigned a top bunk on the date in question. ECF Docs. 44-8, 44-9.

The foregoing grievances demonstrate that Plaintiff never filed a grievance alleging any wrongful conduct by Defendant Nelson. Plaintiff had the means and opportunity to do so, and his multiple grievances against Demontmollin (and others) demonstrate that knew how the grievance procedures worked. Additionally, Plaintiff knew from the December grievance response that Nurse Nelson

documented that Plaintiff did not have any injuries after the incident. Yet, Plaintiff continued to omit Defendant Nelson from any of his later grievances and appeals.

Furthermore, Plaintiff has not challenged Defendant Nelson's argument regarding exhaustion. On August 26, 2019, several days after Defendant Nelson filed her motion to dismiss, the Court entered an order giving Plaintiff twenty-one (21) days to file a response to the motion (ECF Doc. 46), but Plaintiff failed to do so. Plaintiff, thus, does not dispute that the grievances attached to Defendant's motion are the relevant grievances. Indeed, Plaintiff references these same grievances in his second amended complaint and does not identify any others. *See* ECF Doc. 24 at 6 (referencing informal grievance log #106-1712-0153, dated 12/18/17; log #1712-016-059, dated 12/12/17; log #1712-106-117, dated 12/27/17, log #18-6-03420, dated 1/12/18; and log #18-6-04222, dated 1/18/18). Thus, there is no issue of fact on this issue for the Court to resolve.

### IV.   Conclusion

Accordingly, it is RECOMMENDED:

1.   That Defendant Nelson's Motion to Dismiss (ECF Doc. 44) be GRANTED for Plaintiff's failure to exhaust his administrative remedies against her.

2.        That the clerk terminate Defendant Nelson as a party to this action.

At Pensacola, Florida, this 27th day of September, 2019.


*s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.